UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERCEDES R. HARRIS, *Administratrix of the Estate of Sheila R. Harris*, *Plaintiff* | CASE NO. 3:24-CV-1282 (KAD) |
| v. | |
| CITY OF NEW HAVEN, *et al.*, *Defendants*. | JULY 25, 2025 |

<u>**MEMORANDUM OF DECISION**</u>
**RE: [28] MOTION TO DISMISS**

Kari A. Dooley, United States District Judge

The underlying events in this case involve a grievous tragedy: the murder of Sheila Harris ("Harris") after she sought protection from her abuser, Christopher Garvin. Mercedes Harris ("Plaintiff") has brought this suit as administratrix of Harris's estate, asserting that various actors within the New Haven Police Department ("NHPD") failed in their duties, thereby contributing to the fatal outcome. Pending before the Court is a partial Motion to Dismiss filed by Defendants Joseph Vitale and Krystina Polchies ("Defendants") seeking dismissal of Counts Six, Seven, and Eight of Plaintiff's Amended Complaint, which allege wrongful death, common law negligence, and common law recklessness, respectively.

The tragic circumstances of Ms. Harris's death notwithstanding, the Motion compels the Court to apply well-settled doctrines of governmental immunity and federal pleading standards to determine whether the state law claims against Defendants Vitale and Polchies may indeed proceed. Accordingly, and for the reasons set forth below, the Motion to Dismiss is **GRANTED**.

**Allegations**

The Court accepts as true the allegations set forth in the Amended Complaint, which are, in pertinent part, as follows.

On August 19, 2023, Sheila Harris appeared at NHPD headquarters in a state of distress, reporting that Christopher Garvin—a convicted felon—had brandished an illegal firearm at her, stolen her legal firearm, and punched her in the face. Amended Complaint ("Am. Compl."), ECF No. 25 at ¶ 7. Officers on duty observed and documented visible injuries to Harris's forehead and neck. *Id.* at ¶ 8. Following this report, officers, including Defendants other than Vitale and Polchies, obtained Harris's consent to search her home at 237-239 Shelton Avenue for Garvin and the stolen firearm. *Id.* at ¶ 11. Despite conducting a search, officers did not locate Garvin. *Id.* Around this time, NHPD dispatch received a suspicious person complaint at a nearby address, 429 Shelton Avenue—a call that Plaintiff alleges was likely a ruse orchestrated by Garvin to divert law enforcement resources away from Harris's home. *Id.* at ¶ 12. Plaintiff asserts that all responding officers then left Harris alone at her home, despite her documented injuries and the immediate risk posed by Garvin. *Id.* at ¶ 13. Moments later, Garvin emerged, vandalized Harris's car, and fatally shot her when she stepped outside to investigate. *Id.* at ¶ 14.

As to the moving Defendants, the Amended Complaint alleges that dispatcher Krystina Polchies played a central role in this tragedy. Specifically, Plaintiff claims Polchies entered an incorrect location for a second 911 call from Harris, misdirecting officers and delaying assistance during the crucial final moments. *Id.* at ¶ 19. Plaintiff further alleges that Polchies had a history of disciplinary infractions, including providing inaccurate information and failing to follow dispatch protocols, yet remained in her position due to the alleged negligence of her supervisor, Joseph Vitale. *Id.* at ¶¶ 18, 20–22. Plaintiff avers that Vitale, fully aware of Polchies's tainted

work record, nevertheless permitted her to continue dispatching duties without appropriate supervision or remedial training. *Id.* at ¶ 22. This decision, Plaintiff contends, exhibited a conscious disregard for public safety, including Harris's safety.

Counts Six (wrongful death under Conn. Gen. Stat. § 52-555), Seven (common law negligence), and Eight (recklessness) seek to hold Vitale and Polchies liable under Connecticut state law for these alleged failures.

**Standard of Review**

The standards that govern a motion to dismiss under Rule 12(b)(6) are well established. To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir. 2019) (same). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

**Discussion**

The claims advanced in Counts Six, Seven, and Eight against Defendants Vitale and Polchies raise serious questions at the intersection of municipal immunity and tragic human consequence. The claims at issue—Count Six (wrongful death under Conn. Gen. Stat. § 52-555), Count Seven (common law negligence), and Count Eight (common law recklessness)—seek to

hold Vitale and Polchies individually liable for their alleged roles in the events leading to Harris's death.  Each Count is challenged on the grounds of governmental immunity and failure to state a claim upon which relief may be granted.

The Court is acutely aware that allegations of governmental misfeasance or inaction—especially in the context of significant injury and death—must be taken seriously.  But the Court is bound to apply settled principles of law governing the liability of public officials, which, in this case, shield the moving Defendants from liability.

Governmental Immunity (Counts Six and Seven)

Defendants move to dismiss Counts Six and Seven on the grounds that their alleged conduct falls within the protection of Connecticut's common law and statutory doctrines of governmental immunity.

"A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity. . . . Governmental immunity, however, is not a blanket protection for all official acts." *Heigl v. Bd. of Educ.*, 218 Conn. 1, 4 (1991).  "[A] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion." *Elliott v. City of Waterbury*, 245 Conn. 385, 411 (1998) (citations and internal quotations omitted).  "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society.  Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and

employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." *Doe v. Petersen*, 279 Conn. 607, 614–15 (2006) (citations and internal quotations omitted).

Conn. Gen. Stat. § 52–557n codifies, in part, these common law principles of governmental immunity for municipalities, and limits a municipality's liability for its tortious acts or the tortious acts of its employees consistent with these principles. *See Elliott*, 245 Conn. at 407–08. Specifically, Section 52-557n provides for the liability of municipalities for the "negligent acts or omissions of such political subdivision or any employee," except for acts or omissions "which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

Plaintiff first argues that immunity is not afforded here because the acts complained of were not discretionary in nature, but rather, ministerial. "The word 'ministerial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *Evon v. Andrews*, 211 Conn. 501, 505 (1989) (citation and internal quotations omitted). "In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive compelling a municipal employee to act in any prescribed manner." *DiMiceli v. Town of Cheshire*, 162 Conn. App. 216, 224 (2016).

The Amended Complaint fails to identify any statute, ordinance, regulation, or written policy that clearly prescribes the duties of either Vitale or Polchies in a manner that would

transform their decisions into ministerial functions. *See, e.g.*, *Doe v. Town of Madison*, 340 Conn. 1, 31–32 (2021); *Violano v. Fernandez*, 280 Conn. 310, 323 (2006). Rather, the duties alleged— properly dispatching officers, entering accurate call data, training and supervising subordinate employees, and deciding whether to retain staff with prior infractions—fall squarely within the discretionary realm. *See Strycharz v. Cady*, 323 Conn. 548, 568–69 (2016) (supervision and assignment—that is, management—of personnel are discretionary acts); *Texidor v. Thibedeau*, 163 Conn. App. 847, 859 (2016) (emergency response and dispatch decisions are discretionary). In her opposition to the Motion to Dismiss, Plaintiff argues that discovery may later uncover specific directives sufficient to establish ministerial obligations. *See* Pl. Opp., ECF No. 37 at 5. However, the absence of any cited directive, rule, policy, or other source that removes discretion from the performance of these acts is fatal to Plaintiff's attempt to avoid governmental immunity.

There are, however, three exceptions to governmental immunity for discretionary acts, each of which "represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." *Odom v. Matteo*, No. 3:08-CV-1569 (VLB), 2010 WL 466000, at *5 (D. Conn. Feb. 3, 2010) (quoting *Petersen*, 279 Conn. at 615). First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness, or intent to injure; second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm. *See Roguz v. Walsh*, No. 3:09-CV-1052 (TLM), 2012 WL 6049580, at *8 (D. Conn. Dec. 5, 2012). Plaintiff asserts the third exception is applicable here.

*Identifiable Victim/Imminent Harm Exception*

Plaintiff invokes the "identifiable victim/imminent harm" exception to governmental immunity in an effort to preserve her claims notwithstanding the discretionary nature of Defendants' alleged conduct.  This exception, though narrow in scope and exacting in its application, permits liability where "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Haynes v. Middletown*, 314 Conn. 303, 312 (2014).

To invoke this exception, a plaintiff must allege facts that satisfy three conjunctive elements: (1) the harm must be imminent; (2) the victim must be identifiable; and (3) it must be apparent to the public official that inaction will likely subject the victim to the specified harm. *Petersen*, 279 Conn. at 616; *Haynes*, 314 Conn. at 312–13.  The standard is not easily met.  As the Connecticut Supreme Court has affirmed, the risk must be "so high as to require the defendant to act *immediately* to prevent the harm." *Williams v. Hous. Auth. of Bridgeport*, 159 Conn. App. 679, 705–06 (2015) (emphasis in original), *aff'd*, 327 Conn. 338 (2017).  The focus is not on general foreseeability, but on whether the specific official, at the relevant moment, was charged with a clear and urgent duty to intervene.

Here, Plaintiff plausibly alleges the first two prongs.  Harris was not merely a member of the public; she personally presented herself at NHPD headquarters to report recent, concrete acts of violence, including theft of her firearm, brandishing of another illegal weapon, and physical assault.  *See* Am. Compl. at ¶¶ 7–8.  Her injuries were documented, her abuser identified by name, and her fear of further violence clearly conveyed.  The Amended Complaint thus establishes that Harris was both identifiable and subject to imminent harm at the hands of Garvin.

Nevertheless, the third prong—the official's knowledge of the situation and duty to act—presents a more difficult barrier, and one Plaintiff has not plausibly overcome as to either moving Defendant. The exception is not satisfied merely because some government actors were aware of the danger. Rather, a plaintiff must show that the specific municipal employee whose conduct is challenged was presented with circumstances such that they "would have . . . known" of the risk of apparent and immediate harm. *See Grady v. Town of Somers*, 294 Conn. 324, 355 (2009) (quoting *Swanson v. Groton*, 116 Conn. App. 849, 861 (2009)).

With respect to Defendant Vitale, the Amended Complaint alleges that he was aware of Polchies's disciplinary history and failed to remove or retrain her. Am. Compl. at ¶ 22. But these allegations concern his historical supervisory decisions, not any real-time awareness of Harris's peril on the night of August 19th. Plaintiff does not allege that Vitale knew Harris had sought help that night, that she had been left at home, or that Polchies had misentered a dispatch address relevant to Harris's case. Courts have consistently held that personnel management, even when poorly executed, does not itself give rise to liability unless the supervisor is contemporaneously aware of the danger and positioned to intervene. *See Strycharz*, 323 Conn. at 582. Nothing Vitale could have done on the night of August 19th vis-à-vis Polchies would have changed the course of the tragic events that unfolded.

As for Defendant Polchies, Plaintiff alleges that she misentered the location of her second 911 call, causing a delay in police response. Am. Compl. at ¶ 19. But the Amended Complaint does not allege that Polchies knew the call was made by Harris, or that she had specific knowledge of Harris's history, injuries, or threats against her. Absent allegations showing that Polchies appreciated the identity of the caller or the nature of the threat, her conduct—however careless—does not rise to the level of conscious inaction in the face of a known, imminent risk to a specific

8

individual. *See, e.g.*, *Tryon v. Town of North Branford*, 58 Conn. App. 702, 712 (2000) ("[T]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society.") (internal quotation marks and citation omitted).

Ultimately, the Amended Complaint does not support the inference that either of these two Defendants knew of the specific peril Harris faced in the moments before her death and nonetheless failed to act in response thereto. The identifiable victim/imminent harm exception exists not to impose liability for systemic failures or errors in judgment, but to redress narrowly confined situations where a public official, with full awareness of a looming threat to a specific individual, chooses not to act. That standard is not met here.

The Motion to Dismiss is GRANTED as to Counts Six and Seven.

Recklessness (Count Eight)

Plaintiff's final claim against Vitale and Polchies alleges common law recklessness, asserting that each Defendant acted with conscious disregard for Harris's safety by violating mandatory public safety protocols and ignoring known risks. *See* Am. Compl. at ¶¶ 51–53. Under Connecticut law, however, recklessness requires more than mere negligence or even gross negligence; it involves conduct that indicates a subjective awareness of a substantial risk of harm and a conscious decision to ignore it. *See, e.g.*, *Dubay v. Irish*, 207 Conn. 518, 532 (1988); *Dumond v. Denehy*, 145 Conn. 88, 91 (1958). Recklessness must be pleaded with specificity and cannot be inferred from allegations that merely restate negligent conduct in stronger terms. *See Craig v. Driscoll*, 262 Conn. 312, 343 (2003), *superseded by statute on other grounds as stated in O'Dell v. Kozee*, 307 Conn. 231, 265 (2012).

The Amended Complaint fails to satisfy this standard. As to Vitale, the recklessness claim is predicated on his alleged failure to remove or remediate a dispatcher with a history of errors. Am. Compl. at ¶ 22. But decisions regarding personnel supervision and discipline, even if poorly executed, do not, without more, suggest that Vitale had the requisite subjective awareness, that is, that he knew that his inaction would likely result in a substantial risk of harm and yet chose to ignore that risk. Similarly, the allegations against Polchies focus on a dispatching error—entering the wrong location during a 911 call—which, while undoubtedly serious, is not accompanied by factual allegations that she acted with actual knowledge that the error would delay lifesaving intervention or that she deliberately disregarded such a consequence. Absent allegations that either Defendant perceived and disregarded a grave risk in real time, Plaintiff's invocation of recklessness amounts to a legal conclusion unsupported by the facts alleged. *See Iqbal*, 556 U.S. at 678. Accordingly, the Motion to Dismiss as to Count Eight is GRANTED.

The Court appreciates the grievous loss suffered by Harris's family, especially when considered in the context of allegedly systemic failures that, in Plaintiff's view, contributed to her death. But under governing law, municipal employees are shielded from liability for discretionary acts unless a clear and narrow exception applies. Because the Amended Complaint fails to plausibly plead that either of these defendants failed in their performance of a proscribed ministerial duty; fails to plausibly allege the applicability of the identifiable victim/imminent harm exception, and does not plausibly allege recklessness, Counts Six, Seven, and Eight must be dismissed.

**Conclusion**

For all of the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Counts Six, Seven, and Eight are **DISMISSED without prejudice**.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of July 2025.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE